# DEPARTMENT OF BUSINESS REGULATION, FLORIDA LAND SALES CONDOMINIUMS AND MOBILE HOMES v GRANADA LAKES DEVELOPMENT CORPORATION, etc.

Case No. 85-4267

State of Florida, Division of Administrative Hearings

May 22, 1987

## APPEARANCES OF COUNSEL

Robin H. Conner for petitioner.

James L. Goetz and Norman A. Hartman, Jr. for respondent.

## OPINION OF THE COURT

WILLIAM R. DORSEY, JR., Hearing Officer.

### RECOMMENDED ORDER

This matter was heard by William R. Dorsey, Jr., the Hearing

Officer designated by the Division of Administrative Hearings on February 24, 1987 in Fort Myers, Florida. The parties submitted proposed Recommended Orders. No transcript of the proceeding was filed. The Respondent accepted the proposed Findings of Fact of the Department of Business Regulation, with certain limited exceptions. Rulings on the Proposed Findings of Fact made in the Proposed Recommended Orders of both parties are found in the Appendix to this Recommended Order.

## ISSUES

The issue is whether Granada Lakes Development Corporation should be fined for alleged violations of the Florida Condominium Act, Chapter 718, *Florida Statutes?*

## FINDINGS OF FACT

### General Findings Pertaining to the Condominium

1. Granada Lakes Adult RV Resort Condominium is located in Fort Myers, Florida. It consists of 151 units; about 70 have been sold. It was to be developed in three phases. Each unit is a parcel upon which the purchaser may place a dwelling unit.

2. Granada Lakes Development Corporation is the developer of the condominium.

3. The declaration of condominium for Granada Lakes Adult RV Resort Condominium was recorded in the public records of Lee County on March 11, 1982.

4. The Respondents did not include in the original declaration of condominium which submitted Phase I to condominium ownership the time period within which Phases II and III would be completed.

5. The developer owned all condominium units during 1982. Sale contracts for the first units were executed in 1982. The first sales did not close until early 1983.

6. No units have been offered for sale at the Granada Lakes Adult RV Resort Condominium for approximately eighteen months preceding the day of the hearing.

7. Respondents ceased to be the developer of Granada Lakes RV Resort Condominium at the end of July 1985.

8. Granada Lakes Development Corporation was involuntarily dissolved by the Department of State on about November 1, 1985.

Distribution of Statements of Receipts and Expenses for 1983 and 1984

9. Morgan Lloyd closed the purchase of his unit in February 1983.

**181**

He served as treasurer for the condominium association from February 1983 until approximately Februar 1984. Mr. Lloyd prepared a financial statement showing receipts and expenditures for the calendar year 1983. Although this statement is for calendar year 1983, the association's fiscal year for 1983 ended October 31, 1983. The statement of income and expenses for the year 1983 was prepared more than 60 days after the close of the fiscal year. The account balance was determined as of December 31, 1983, so the statement had to have been prepared after that date. It was distributed to unit owners at the first annual meeting of the unit owners, which occurred on February 23, 1984. (This disregards, for the moment, the unit owners meeting held by the developer when it was the sole owner of the units, see Finding of Fact 15, *post.)*

10. The annual financial report of the association for fiscal year 1984 was not distributed earlier than March 1985.

### Proposed Budgets for 1982 through 1984

11. Proposed annual budgets for the years 1982 and 1983 had been prepared by the developer and were distributed with the prospects for the condominium units.

12. The proposed budget for 1982 (which was included in the prospectus) contained as line item 13 for operating expenses a reserve account for roof replacement, equipment replacement, building painting and pavement resurfacing. It called for an annual reserve funded by all 151 units of $3,415.

13. Copies of the 1985 proposed annual budget of common expenses were mailed to unit owners 13 days prior to the meeting at which the 1985 budget was to be considered.

### Reserves

14. After the developer began conveying out units in 1983, there was never a meeting of the condominium association at which the membership voted to waive or reduce the funding of reserves shown in the estimated budget in the prospectus of $1.88 per condominium unit per month. These reserve monies were placed in the reserve account quarterly as they were paid by unit owners.

15. The developer did not pay any reserves in 1983 or 1984 for units owned by the developer because, in the developers view, those payments were not due under the resolution passed during the January 5, 1983 membership meeting of Granada Lakes Adult RV Resort Condominium Association, Inc. That meeting had been held at a time when the developer owned all of the units that made up the association. The

182

meeting occurred after distribution of the prospectus, which disclosed the reserve account and showed *all* units contributing to the payment of common operating expenses, including reserves. That resolution states:

the President of the Association then brought up for consideration the proposal by the developer, Granada Lakes Development Corporation, that it guarantee the maintenance fee during the two-year period commencing January 5, 1983. Upon a motion duly made and adopted, the Association agreed that in lieu of the developer paying its maintenance assessments on unsold units that the developer could and did agree to guarantee that for the two-year period stated above the maintenance fee charged to unit owners other than the developer would not exceed the [sic] $31.61 per month and that any shortage that might be incurred in the maintenance of the Association during such period shall be covered by the developer. Such agreement was accepted by all concerned, including the Development Corporation, which is as of the time of this meeting the sole unit owner in the Condominium.

The matter of the reserves was also discussed and the Development Corporation, as the sole unit owner, agreed with the association to the waiver of the funding of reserves for the same two year period.

16. Based on the payment of $1.88 per unit per month the amount of money which should be in the reserve account from the date of recording of the declaration of condominium until the date the respondent was no longer the developer is $11,554. As of July 1985 the reserve account contained $3,227.35, having a deficit of $8,326.65. Since units began to be sold, there have been no withdrawals made from the reserve account.

17. Mr. Sharp, the president of the developer, testified that he spent approximately the $2,400 for reserve-type expenses but had sought no reimbursement from the reserve account because he wanted the reserve account going. No receipts verifying such expenditures were introduced into evidence. This attempt to offset developer expenses against amounts the developer should have paid into the reserve account of the Association is rejected as unpersuasive.

### Association Records

18. While he served as Association treasurer, Morgan Lloyd asked on several occasions to see the bills for Association expenses. Mr. Sharp would only tell him the amount of the association's bills, and refused to let Mr. Lloyd see the original bills.

183

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction over this matter. Section 120.57(1), *Florida Statutes.*

2. Under Section 718.111(13), *Florida Statutes* (1983):

Within 60 days following the end of the fiscal or calendar year or annually on such date as is otherwise provided in the bylaws of the association, the board of administration of the association shall mail or furnish by personal delivery to each unit owner a complete financial report of actual receipts and expenditures for the previous 12 months. The report shall show the amounts of receipts by accounts and receipt classifications and shall show the amounts of expenses by accounts and expense classifications. . . .

The developer failed to furnish reports for 1983 and 1984 within 60 days of the end of the fiscal year and has twice violated this provision.

3. Section 718.112(2)(d), *Florida Statutes* (1983), provides:

There shall be an annual meeting of the unit owners. . . . The bylaws shall provide the method of calling meetings of unit owners, including annual meetings. Written notice shall be given to each unit owner and shall be posted in a conspicuous place on the condominium property at least 14 days prior to the annual meeting. Unless a unit owner waives, in writing, the right to receive notice of the annual meeting by mail, the notice of the annual meeting shall be sent by mail to each unit owner, and the post office certificate of mailing shall be retained as proof of such mailing.

An Association meeting was held January 5, 1983, when the developer owned all condominium units. The February 23, 1984, annual meeting was the first annual meeting attended by unit owners other than the developer. There has been no violation of Section 718.112(2)(d), *Florida Statutes* (1983), for years 1982 and 1983.

4. Section 718.112(2)(e), *Florida Statutes* (Supp. 1984), provides:

The board of administration shall mail a meeting notice and copies of the proposed annual budget of common expenses to the unit owners not less than 14 days prior to the meeting at which the budget will be considered. . . .

Respondent stipulated that copies of the 1985 proposed annual budget were mailed 13 days prior to that meeting, which violates Section 718.112(2)(e), *Florida Statutes* (1984 Supp.).

5. The Respondent stipulated that it did not include in the original declaration which submitted Phase I to condominium ownership the

184

time periods within Phases II and III would be completed. This violates Section 718.403(1), *Florida Statutes* (1981), which states:

> A developer may develop a condominium in phases, if the original declaration of condominiums submitting the initial phase to condominium ownership provides for and describes in detail . . . the time period within which each phase must be completed.

6. The developer is liable for funding reserves for all units that it held, notwithstanding the attempt to waive its duty to make monthly maintenance payments by the resolution of January 5, 1983. Under section 718.116(8)(b), *Florida Statutes* (1983):

> A developer or other person owning condominium units or having an obligation to pay condominium expenses may be excused from the payment of his share of the common expense which would have been assessed against those units during the period of time that he shall have guaranteed to each purchaser *in the purchase contract, declaration, or prospectus, or by agreement between the eveloper and the majority of the unit owners other than the developer,* that the assessment for common expenses the condominium imposed upon the unit owners would not increase over a stated dollar amount and shall have obligated himself to pay any amount of common expenses incurred during that period and not produced by the assessments at the guaranteed level receivable from other unit owners. (Emphasis supplied.)

The prospectus indicated all unit owners would contribute to the operating expenses of the association by paying monthly assessments. The evidence from the developer was that a guarantee was made by resolution adopted at the membership meeting of the association held on January 5, 1983. Under the statute the agreement to guarantee expenses may be made by the developer and a majority of unit owners other than the developers, but at the time the resolution was passed the vote of the unit owners was nothing other than the vote of the developer. That resolution itself shows that the development corporation was the sole unit owner. It was therefore ineffective to absolve the developer from the duty of making monthly assessment payments, including contributions to the reserves which are part of the association's monthly operating expenses. Those who had entered into contracts for the purchase of units before the date of the meeting the developer had with itself as the owner of all units had been lead to believe that reserves would have been building up during the period when the property was submitted to condominium ownership by assessment payment by all unit owners, including the developer.

185

7. The waiver of reserves is also improper under Section 718.112(2)(k), *Florida Statutes* (1983), which provides in part:

This subsection [requiring budgeting for reserve accounts for capital expenditures and deferred maintenance] shall not apply to budgets in which the level of assessments has been guaranteed pursuant to Section 718.116(8) prior to October 1, 1979, provided that the absence of reserves is disclosed to purchasers, or to budgets in which the members of the association have, by a vote of a majority of the members present at a duly called meeting of the association, determined for a fiscal year to provide no reserves or reserves less adequate than provided by this subsection.

The developer cannot be permitted to play fast and loose with the requirement to budget for reserves by including them in the estimated operating budget disseminated in the prospectus, attracting purchasers based on the prospectus, and then waive the reserves at the membership meeting called shortly before the first units are conveyed to purchasers while the developer is still the sole owner of all units. Even if such a misleading strategy could be countenanced, the attempt fails here for failure to comply with the language of Section 718.116(2)(k) because the developer's agreement with itself to waive reserves was for the two year period, January 5, 1983 to January 4, 1985, but the statute only permits waivers on a fiscal year basis. The waiver attempt is fatally flawed because no motion to waive reserves for any fiscal year was made or adopted. Given the actual collection of reserves from unit owners, it appears the developer's intent was to waive reserve payments on units it owned, but to require other unit owners to make those payments. There is no statutory authority for such a plan. Consequently, the developer is fully liable for the underfunding of reserves in the amount of $8,326.65.

8. According to Section 718.111(7), *Florida Statutes* (1983) association records shall be open to inspection by unit owners or to their authorized representatives at reasonable times. Mr. Sharp's failure to make available to Mr. Lloyd original copies of bills which Mr. Lloyd was to pay as treasurer of the association was a denial of the inspection right provided by the statute.

## RECOMMENDATION

A civil penalty for each violation of the condominium act, not to exceed $5,000.00 per offense may be imposed under section 718.501(1)(d)4., *Florida Statutes* (1983). The Division of Florida Land Sales, Condominiums and Mobile Homes may also take affirmative

186

action to carry out the purposes of Chapter 718. Section 718.501(1)(d)2., *Florida Statutes* (1983). Based on the foregoing, it is

RECOMMENDED THAT:

1. For its multiple violations of the condominium act, Granada Lakes Development Corporation shall pay to the Division of Florida Land Sales, Condominiums and Mobile Homes within thirty (30) days of the entry of a final order civil penalty in the total amount of $5,000.00 by certified check payable to the direction of the Division.

2. Within thirty (30) days of the issuance of a final order the developer shall pay to the Granada Lakes Adult RV Resort Condominium Association the sum of $8,276.65 representing its liability for reserves from the recording of the date of a declaration of condominium through July 1985.

DONE AND ORDERED this 22nd day of May, 1987, in Tallahassee, Florida.